Filed 3/26/26

# <u>CERTIFIED FOR PARTIAL PUBLICATION</u>[*]

## IN THE

## COURT OF APPEAL OF THE STATE OF CALIFORNIA

## IN AND FOR THE

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re | F090041 |
| ROBERT Q. BERGSTROM, | (Fresno Super. Ct. Nos. F24905137, 24CRWR687582) |
| On Habeas Corpus. | **OPINION** |

ORIGINAL PROCEEDINGS; application for writ of habeas corpus. William Terrence, Judge.

Schweitzer & Davidian, PC, Eric H. Schweitzer, and Annie L. Davidian, for Petitioner.

Lisa A. Smittcamp, Fresno County District Attorney, Traci Fritzler, Assistant District Attorney, and Jamie Kalebjian, Senior Deputy District Attorney, for Respondent.

-ooOoo-

---

[*] Under California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

# INTRODUCTION

Petitioner Robert Quinlan Bergstrom (petitioner) filed a petition for writ of habeas corpus in our court after the magistrate court issued a no-bail order and the superior court denied his petition for a writ of habeas corpus. Petitioner is currently incarcerated at Fresno County Jail. In July 2024, a criminal complaint was filed alleging he committed several Penal Code violations, to wit: lewd acts upon a child (§ 288, subd. (a), counts 1, 3, & 7), oral copulation or sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b), counts 2, 5, & 6), a forcible lewd act on a child (§ 288, subd. (b)(1), count 4), and continuous sexual abuse of a child (§ 288.5, subd. (a), count 8). (Undesignated statutory references are to the Penal Code.) After holding a hearing, the magistrate ordered petitioner held without bail and it reiterated that holding after conducting an automatic review of the no-bail order.

In his petition for a writ of habeas corpus before the superior court and our court, petitioner argued: 1) the evidence before the magistrate did not provide grounds for denial of bail outright, i.e., there was insufficient evidence he committed a qualifying felony involving violence, despite a section 288, subdivision (b) charge; 2) there was not clear and convincing evidence to support a substantial likelihood his release would result in great bodily harm to others given the nature of the offenses, his age, and his lack of criminal history; 3) the magistrate erred in relying upon the definition of great bodily harm in section 292 to interpret the constitutional provision; 4) respondent should be required to show cause why he is not entitled to the relief requested; and 5) the no-bail order should be vacated and reasonable bail set.

The superior court denied the petition and, initially, we also denied the petition for a writ of habeas corpus. Petitioner then appealed to the California Supreme Court and the matter was transferred back to us. In its transfer order, the Supreme Court directed our court to issue an order to show cause asking the Fresno County Sheriff's Office to show cause why petitioner is not entitled to relief on the following grounds:

2.

"(1)…[S]ection 292 constitutes an ' "exten[sion] by legislative definition" ' (*Forster Shipbuilding Co. v. County of Los Angeles* (1960) 54 Cal.2d 450, 456) of the terms 'acts of violence' and 'great bodily harm' as used in article I, section 12, subdivision (b) of the state Constitution; and (2) absent … section 292, it is not the case a 'reasonable trier of fact could find, by clear and convincing evidence, a substantial likelihood that [petitioner]'s release would lead to great bodily harm to others.' " Our court issued an order to show cause and respondent (the People) filed a return contending, in part, section 292 is not in conflict with the California Constitution or an illegal amendment to it; rather, it has been incorporated directly into the Constitution by way of Proposition 189. Irrespective, they also argue substantial evidence supports the magistrate court's conclusion that there is a substantial likelihood of great bodily harm if petitioner is released to the public.

We conclude section 292 is not constitutionally invalid and deny the petition for writ of habeas corpus for the reasons stated herein.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2024, a criminal complaint was filed alleging petitioner committed lewd acts upon a child (§ 288, subd. (a), counts 1, 3, & 7), oral copulation or sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b), counts 2, 5, & 6), a forcible lewd act on a child (§ 288, subd. (b)(1), count 4), and continuous sexual abuse of a child (§ 288.5, subd. (a), count 8). The charges involved four different minors who are petitioner's grandchildren. A multiple victim enhancement allegation was also alleged as to counts 1, 3, 4, 7, and 8 (§ 667.61, subd. (b)).

**Proceedings Before the Magistrate Court**

At the arraignment on July 30, 2024, the magistrate court set bail at the "statutory" amount, $965,000, and ordered petitioner to have no contact with any of the alleged victims, and to stay at least 100 yards away from them and their places of residence.

Neither party objected. On October 10, 2024, petitioner filed a motion for pretrial relief and automatic bail review pursuant to *In re Humphrey* (2021) 11 Cal.5th 135 and section 1270.2. He asked the court to lower bail to an amount he could afford considering his financial situation or to order any other terms of release necessary to address concerns as to public safety. The People opposed the request and moved the magistrate to order petitioner be held without bail. They asserted defendant's "repeated sexual abuse of four children in his family indicate he poses a significant danger to the community … that cannot be effectively mitigated with conditions of release." In response, petitioner asserted the People's request for the court to hold him without bail was "due to his financial inability to post bail at the scheduled amount" and "antithetical to … *Humphrey*" and "runs contrary to core state and federal due process and equal protection principles." Petitioner argued there were no changed circumstances to support the People's motion requesting the court impose a " 'no bail' " hold. He also argued the court should "doubt the reliability of the People's proffer" because it was "hearsay from persons who have demonstrated a willingness to commit financial elder abuse and to purport that [petitioner] has admitted things he never admitted."

The magistrate court held a *Humphrey* hearing on October 17, 2024. The People proffered Detective Andrea Flores's sworn testimony. Flores summarized the investigation in the case including statements taken from five confidential victims.

Confidential victim one, who was eight years old at the time of the hearing, reported petitioner was her grandfather and he molested her more than five times. She reported, during the summer of 2024, she and petitioner would play cards and petitioner would make skin-to-skin contact with her "private area" using his hand, including digital penetration.

Confidential victim two, who was 16 years old at the time, reported to Flores that petitioner sexually abused her " 'very frequently' " from when she was four years old until she was 10 years old. He would begin by massaging her body before moving his

4.

hands to her "private area." Petitioner told her that if she told anyone about the touching she would not get to see her grandmother anymore. She recalled an incident during which she asked petitioner to stop rubbing her vagina but he refused.

Flores testified confidential victim three reported petitioner, her grandfather, would massage her body and touch her breasts and vagina underneath her clothes when she was eight or nine years old. She recalled the inappropriate touching on three separate occasions.

Flores also summarized a statement taken from confidential victim four, who was then 19 years old. Petitioner is her grandfather and she recalled he massaged her buttocks and rubbed her vagina when she was five years old. She also recalled an incident when she was seven or eight years old that happened in the car during which petitioner placed his hand under her shorts and touched her vagina. When confidential victim four was 10 or 11 years old, petitioner visited her house and placed her hand on his penis.

Flores also testified there were two other incidents documented by law enforcement involving petitioner in the early 2000s regarding petitioner's alleged sexual assault of two adult women; no charges were filed. Flores interviewed confidential victim one and confidential victim two's father, who was petitioner's son. Petitioner's son told Flores that he called petitioner after learning of the abuse and petitioner did not deny the abuse; rather, petitioner apologized and said words to the effect of "I guess I will kill myself." That phone call was not recorded. However, during a recorded pretext call, petitioner's son confronted petitioner with the allegations of abuse of confidential victim one and confidential victim two and petitioner took responsibility and apologized. Petitioner's son also asked petitioner if he was currently still touching other girls. Flores noted a six-second pause in the conversation. Thereafter, petitioner's son asked if they should be worried or concerned about who is around petitioner and Flores noted a nine-second pause by petitioner. Flores also discussed a potential fifth victim who is now

61 years old, who reported defendant touched her when she was a child. The magistrate court found the People's proffer "reliable."

The defense provided information at the end of the hearing regarding petitioner's financial situation and the amount of bail he could afford. The defense also argued the parents of confidential victim one, confidential victim two, confidential victim three, and confidential victim four, and other family members, stood to benefit from petitioner's arrest and incarceration. The magistrate court accepted petitioner's proffer but did not find it reliable. In its order, the court stated it did "not find any reliable information to support any accusation of collusion or manipulation of the investigation. [Petitioner]'s statements in the phone calls … suggest he admits the sexual abuse alleged, is remorseful for his actions and even referenced taking his own life as a result of his actions coming to light." Petitioner's "statements do not resemble those of a person being framed by his family for pecuniary gain, but, rather, the acknowledgement of one's wrongdoing."

The magistrate court stated it "considered [petitioner's] request to be released on pretrial services, with the GPS monitor, including additional limitations that [petitioner's] movements be limited to his home, place of business, and medical appointments in conjunction with the previously issued criminal protective order." The court did "not find that any combination of those nonfinancial conditions would protect the public or the victims in this case from [petitioner]." The court also stated that the People were not required to establish a change in circumstances to request remand without bail when the issue had not been materially addressed previously by the court.

The magistrate court ultimately ordered petitioner remanded without bail pursuant to article I, section 12, subdivision (b) of the California Constitution. It explained:

> "Based on an individualized consideration of the aforementioned factors, the court finds by clear and convincing evidence that nonfinancial conditions of release will not reasonably protect the victim [*sic*] and public. The court finds that the facts are evident and the presumption is great that [petitioner] committed the sexual offenses charged in the felony complaint

6.

and this court finds by clear and convincing evidence that there is a substantial likelihood [petitioner's] release would result in great bodily injury to others.

"It is apparent to this court that [petitioner] committed felony sexual assault upon numerous minors, on multiple occasions over the course of 15 years (2009–2024). This court makes that finding beyond a clear and convincing standard. There is sufficient evidence, based on the proffer in yesterday's hearing to sustain a guilty verdict against [petitioner] in each of the charges alleged. The sexual assaults were committed on young vulnerable victims who trusted him. [Petitioner]'s ability to utilize otherwise innocent interactions, such as playing cards, or socializing before or after dinners, or while transporting children in vehicles, demonstrate his ability to conceal his motives to commit sexual assault upon minors, which would result in great bodily harm. The extraordinary harm inflicted upon sexual assault victims, especially child victims, is not measurable in an x-ray machine, or by the number of stitches. The emotional trauma is severe. Unlike a fractured arm, or loss of consciousness or a significant laceration, the wounds of sexual assaults do not heal in the same manner. Broken bones heal over the course of several weeks. Skin can be sutured and repaired after a month or two. As evidenced by statements of [confidential victim five] in this case, sexual assault harm lasts decades. [Petitioner] has inflicted something far greater than great bodily harm in this case. This court acknowledges the *Humphrey*/*Harris* line of cases use the standard of great 'bodily' harm. However, this court interprets/understands that term being used by those courts and the C[alifornia] Const[itution] specifically to illustrate more than minor or moderate 'harm.' This court's ruling is that the harm inflicted or the harm likely to be inflicted is on a significantly greater magnitude than the legal definition of 'great bodily injury.' The evidence presented clearly and convincingly demonstrates as much. This court finds by clear and convincing evidence that if he were released, under any circumstances, there is a substantial likelihood that it would result in great bodily harm to others. The court finds by clear and convincing evidence that no less restrictive condition than detention can reasonably protect public and victim safety."

In October 2024, pursuant to the defense's request pursuant to section 1270.2, the magistrate conducted an automatic review of the no-bail order. The court stated it had not initially considered section 292 in denying bail, noting neither party had raised it, but the court concluded this section "applies to this situation." Section 292 provides, "It is

7.

the intention of the Legislature … that for the purposes of subdivisions (b) and (c) of [s]ection 12 of [a]rticle I of the California Constitution, a violation of … subdivision (b) of [s]ection 288 … shall be deemed to be a felony offense involving an act of violence and a felony offense involving great bodily harm." The court reiterated its prior conclusion that "there are no conditions that this Court could order upon [petitioner] that would address this Court's concern regarding public safety and victim safety in this case."

**Petition For Writ of Habeas Corpus Before the Superior Court**

Petitioner challenged the no-bail order in a petition for writ of habeas corpus in the superior court. He argued, in part, that the magistrate "abused its discretion in the first instance by entertaining [r]eal [p]arty's motion to impose a 'no bail' order without objecting to the [o]rder admitting [p]etitioner to bail at the time it was made or offering *any* changed circumstances." He asked for the superior court to issue an order to show cause "due to the ensuing [d]etention [o]rder whereby the trial court failed to articulate any non-speculative reasons why [r]eal [p]arty's proffer … support[s] any substantial likelihood of great bodily harm to anyone." (Bold omitted.) He also asked the court to find that, "regardless of the trial court's conjecture about past harms based upon [p]etitioner's alleged past conduct, there was no evidence to support the existence of a 'substantial likelihood' of harm shown by [r]eal [p]arty." (Underlining omitted.)

The superior court issued an order to show cause requesting a response from the parties with regard to whether the magistrate court committed an abuse of discretion by considering the prosecution's request for remand without bail absent a change in circumstance warranting the request, and whether the evidence failed to support a finding that the harm likely to occur constituted "great bodily harm" for the purpose of denying bail under article I, section 12, subdivision (b) of the California Constitution. After receiving responses, the court denied the petition.

**Proceedings in this Court**

In his petition before our court, petitioner argued evidence before the magistrate did not provide grounds for denial of bail outright. Specifically, he argued there was insufficient evidence he committed a qualifying felony involving violence despite the section 288, subdivision (b) charge because the "general rule is that threats to retaliate for disclosing a sex offense do not result in duress." He also asserted no clear and convincing evidence supported a substantial likelihood his release would result in great bodily harm to others given the nature of the offenses, his age, and his lack of criminal history. He argued the magistrate erred in relying upon the definition of great bodily harm in section 292 to interpret the constitutional provision. He contended respondent should be required to show cause why he is not entitled to the relief requested, the no-bail order should be vacated, and the superior court should be ordered to set a reasonable bail.

On August 15, 2025, our court issued an order denying the petition for writ of habeas corpus. The California Supreme Court granted review and transferred the matter back to us with directions for our court to issue an order to show cause asking the Fresno County Sheriff's Office to show cause why petitioner is not entitled to relief on the following grounds: "(1)… [S]ection 292 constitutes an ' "exten[sion] by legislative definition" ' (*Forster Shipbuilding Co. v. County of Los Angeles*[, *supra*,] 54 Cal.2d [at p.] 456) of the terms 'acts of violence' and 'great bodily harm' as used in article I, section 12, subdivision (b) of the state Constitution; and (2) absent … section 292, it is not the case a 'reasonable trier of fact could find, by clear and convincing evidence, a substantial likelihood that [petitioner]'s release would lead to great bodily harm to others' (*In re White* (2020) 9 Cal.5th 455, 465; *People v. Caudillo* (1978) 21 Cal.3d 562.)"

9.

## DISCUSSION

We now consider these issues and, for the foregoing reasons, deny the petition for writ of habeas corpus.

### I.      Section 292 Is Not An Extension by Legislative Definition of the Constitution

In the return, respondent contends section 292 was enacted in 1984, and "[o]ver the years, the legislative history of bail demonstrates that … section 292 was incorporated into the California Constitution over a series of amendments which were passed by the California voters." Specifically, respondent argues section 292 was incorporated directly into the Constitution by way of Proposition 189.

### A.      California Constitution Article I, Section 12 and Penal Code Section 292

In 1982, California voters passed Proposition 4, which, in part, broadened the circumstances under which courts could deny bail to permit a bail exception (1) in felony cases involving acts of violence against another person when (a) the proof of guilt is evident or the presumption of guilt is great and (b) there is a substantial likelihood that the accused's release would result in great bodily harm to others, and (2) in felony cases when (a) the proof of guilt is evident or the presumption of guilt is great and (b) the accused has threatened another with great bodily harm and there is a substantial likelihood that the threat would be carried out if the person were released. (See Ballot Pamp., Primary Elec. (June 8, 1982) Analysis by the Legislative Analyst of Proposition 4, p. 16 (hereafter Proposition 4 Pamphlet).) Thus, in 1984, the California Constitution, article I, section 12, provided a bail exception as follows:

"A person shall be released on bail by sufficient sureties, except for:

"(a) Capital crimes when the facts are evident or the presumption great;

10.

"(b) Felony offenses involving acts of violence on another person when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or

"(c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released.

"Excessive bail may not be required. In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.

"A person may be released on his or her own recognizance in the court's discretion." (Cal. Const., art. I, § 12, as amended June 8, 1982.)

In 1984, the Legislature enacted section 292, which provides that specified sexual offenses are deemed to be felony offenses involving acts of violence and felony offenses involving great bodily harm for purposes of subdivisions (b) and (c) of section 12 of article I of the California Constitution. (Stats. 1984, ch. 1202, § 1, eff. Sept. 17, 1984.) This section was subsequently amended to include reference to different provisions of the Penal Code and section 292 currently states as follows:

"It is the intention of the Legislature in enacting this section to clarify that for the purposes of subdivisions (b) and (c) of [s]ection 12 of [a]rticle I of the California Constitution, a violation of paragraph (2) or (6) of subdivision (a) of [s]ection 261, paragraph (1) or (4) of subdivision (a) of former [s]ection 262, [s]ection 264.1, subdivision (c) or (d) of [s]ection 286, subdivision (c) or (d) of [s]ection 287 or former [s]ection 288a, subdivision (b) of [s]ection 288, or subdivision (a) of [s]ection 289, shall be deemed to be a felony offense involving an act of violence and a felony offense involving great bodily harm."

B.    Proposition 189

In 1994, the Legislature and voters approved Proposition 189, which amended article I, section 12 of the California Constitution to add "or felony sexual assault offenses" to the list of crimes excepted from the right to bail. The Legislative Analysis of

11.

Proposition 189 acknowledged that, "[f]or purposes of these provisions, existing statutory law specifies that certain types of sexual offenses are to be considered felony offenses involving violence and serious bodily harm." (See Ballot Pamp., General Elec. (November 8, 1994) Analysis by the Legislative Analyst of Proposition 189, p. 8 (hereafter Proposition 189 Pamphlet).) It explained, "[t]his constitutional amendment would permit the courts to deny bail for a wider range of sexual offenses. Specifically, this measure would allow the courts to deny bail if a person is accused of committing any felony 'sexual assault' offense." (*Ibid*.)

Accordingly, subdivision (b) of article I, section 12 of the California Constitution now excepts from the bail requirement, "[f]elony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others …."

### C.     Analysis

The question before us is whether section 292 amounts to a legislative extension of the terms used in article I, section 12 of the California Constitution such that it amounts to an invalid amendment to the Constitution. For the following reasons, we conclude it does not.

" ' "[S]ince a written constitution is intended as and is the mere framework according to whose general outlines specific legislation must be framed and modeled, and is therefore … necessarily couched in general terms or language, it is not to be interpreted according to narrow or supertechnical principles, but liberally and on broad general lines, so that it may accomplish in full measure the objects of its establishment and so carry out the great principles of government." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 655 (*Giordano*); *Amador Valley Joint Union High Sch. Dist. v. State Bd. Of Equalization*

(1978) 22 Cal.3d 208, 244–245.)  "Terms used in a constitutional amendment 'must be construed in the light of their meaning at the time of the adoption of the amendment and cannot be extended by legislative definition, for such extension would, in effect, be an amendment of the constitution, if accepted as authoritative.' " (*Forster Shipbuilding Co. v. County of Los Angeles*, *supra*, 54 Cal.2d at p. 456 (*Forster Shipbuilding*);[1] see *Stribling's Nurseries, Inc. v. County of Merced* (1965) 232 Cal.App.2d 759, 762 ["the Constitution cannot be amended by a statutory enactment"].)  But where the scope of a term is not defined nor clear from the text of a constitutional provision, we look to the statutes the Legislature has enacted to implement this constitutional provision.  (See *Giordano*, at p. 655.)  " '[I]t is well settled that when the Legislature is charged with

---

[1] In *Forster Shipbuilding*, the California Supreme Court considered the constitutionality of section 107.1 of the Revenue and Taxation Code, which was enacted by the Legislature to provide relief to lessees of tax-exempt property who had obtained rentals before a California Supreme Court decision issued holding that the rental value of their property would be taxed (that there would be no deductions for rental or amortization of possessory interests of lessees of tax-exempt property).  (*Forster Shipbuilding*, *supra*, 54 Cal.2d at p. 453.)  Revenue and Taxation Code section 107.1 provided, in part, that " '[a] possessory interest, when arising out of a lease of exempt property, consists of the lessee's interest under such lease and is hereby declared to be personal property within the meaning of [s]ection 14 of [a]rticle XIII of the Constitution of the State of California.' " (*Forster Shipbuilding*, at p. 453.)  The *Forster Shipbuilding* court held that this portion of Revenue and Taxation Code section 107.1 was "invalid." (*Forest Shipbuilding,* at p. 457.)  It explained, "at the time section 14 of article XIII [of the California Constitution] was adopted possessory interests in land, including leasehold interest in tax-exempt land, had long been expressly classified by both statute and judicial decision as real property for purposes of taxation." (*Id*. at p. 456.)  It further reasoned, the interpretation of " 'personal property' " in another section of the California Constitution, section 9a of article XIII, and the textual analysis of section 14 of article XIII supported this conclusion. (*Forster Shipbuilding*, at p. 456.)  The *Forster Shipbuilding* court also concluded "deference to the legislative interpretation of the term 'personal property,' even if otherwise justifiable, would only defeat the broader legislative purpose to tax leasehold interests in tax-exempt land." (*Id*. at p. 457.)  The court nonetheless held that the remainder of Revenue and Taxation Code section 107.1 was valid and was not an unreasonable exercise of the Legislature's power to mitigate hardships caused by the overruling of established law. (*Forster Shipbuilding*, at pp. 459–460.)

13.

implementing an unclear constitutional provision, the Legislature's interpretation of the measure deserves great deference.' " (*Id*. at pp. 655–656.) "When the Legislature has 'adopted a plausible interpretation of the constitutional provision,' we defer to its determination." (*Id*. at p. 656.)

Petitioner contends "the [L]egislature is not charged with implementing article I, section 12 [of the California Constitution]; that is the duty of the courts. Judges and justices interpret [article I,] section 12 of the California Constitution and use it to determine who may be denied bail. Therefore the [L]egislature has no special role in interpreting [article I,] section 12."

Relevant here, in *In re Boyle* (1974) 11 Cal.3d 165, the California Supreme Court addressed whether a bail exception applied to two individuals charged with murder and conspiracy to commit murder given the language of article I, section 6 of the California Constitution, which declared that " 'All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great.' " (*Boyle*, at pp. 166–167.) The *Boyle* court explained "[t]he determinative question … is whether these crimes are 'capital offenses' within the meaning of article I, section 6" of the California Constitution, as that constitutional provision did not "itself define the term; it simply withholds in such cases a constitutional right to bail, *and impliedly grants to the Legislature the power to implement that exception*." (*Id*. at p. 167, italics added.) "Pursuant to that grant, the Legislature (1) enacted a procedural statute expressly forbidding bail in capital cases in which the proof is evident or the presumption great (… § 1270), and (2) delineated the class of such cases by substantive provisions imposing the death penalty for specified offenses." (*Ibid*.) *Boyle* stated: "In adopting the new statute the Legislature has, inter alia, again exercised its power to implement the bail provision of our Constitution by circumscribing the class of 'capital offenses' referred to therein. It follows that only persons accused of crimes in that class may not be denied bail pursuant to [former] … section 1270." (*Id*. at p. 168.) The *Boyle* court held that the

14.

petitioners were not death eligible under the law applicable to their cases so the crimes were not " 'capital offenses.' " (*Id*. at p. 169.) Thus, the petitioners were entitled to reasonable bail. (*Ibid*.)

Here, as in *Boyle*, on its face, article I, section 12 of the California Constitution does not itself define the phrases "felony offenses involving acts of violence on another person" or "great bodily harm," in providing an exception to the bail requirement. (*In re Boyle*, *supra*, 11 Cal.3d at p. 167.) "[I]t simply withholds in such cases a constitutional right to bail, and impliedly grants to the Legislature the power to implement that exception." (*Id*. at p. 167.) Pursuant to that grant, the Legislature enacted section 292, a substantive provision identifying specified offenses, to further delineate the scope of the class of such cases subject to the bail exception.[2]

Nevertheless, petitioner asserts the constitutional provision at issue "is not ambiguous." He argues the California Supreme Court had "already rejected the view that great bodily injury meant something different in sex cases than in other cases," citing *People v. Caudillo*, *supra*, 21 Cal.3d 562 (*Caudillo*). He contends that "[t]reating section 292 as authoritative 'would, in effect, be an amendment of the constitution' (*Stribling's Nurseries, Inc*.[ *v. County of Merced*], *supra*, [232 Cal.App.2d], at p. 762) without the amendment having been approved by the electorate."

Initially, we note, *Caudillo* considered whether the victim of a sexual attack sustained " 'great bodily injury,' " as that term was used in then section 461. (*Caudillo*, *supra*, 21 Cal.3d at pp. 575–576.) *Caudillo* did not address the phrase " 'great bodily harm,' " as that term is used in the context of the California Constitution. Indeed,

_____

[2] Notably, the California Supreme Court has acknowledged, "[s]ubject to the constitutional prohibition of cruel and unusual punishment, the Legislature has the power and duty to define and classify crimes and offenses." (*Tracy v. Municipal Court* (1978) 22 Cal.3d 760, 765; see *People v. Farley* (2009) 46 Cal.4th 1053, 1119 [" ' " 'the power to define crimes and fix penalties is vested exclusively in the legislative branch' " ' "].)

*Caudillo* highlights the distinction between the words " 'injury' " and " 'harm,' " pointing out the statute at issue in that case did not use the words actual bodily harm, or great bodily harm, or bodily injury, and "[i]t must be presumed the Legislature was aware that the term 'bodily harm' had been interpreted judicially to include the fact that a victim suffered a forcible rape." (*Id*. at p. 577.) *Caudillo*, referencing *People v. Chessman* (1951) 38 Cal.2d 166, 581, explained " '[b]odily harm is generally defined as "any touching of the person of another against his will with physical force in an intentional, hostile and aggravated manner, or projecting of such force against his person," ' " and "a forcible rape, without more, constitutes the infliction of 'bodily harm.' " (*Caudillo*, at pp. 577–578, italics omitted.) *Caudillo* continued,

> "The term 'great bodily injury,' added to … section 461, substitutes the word 'injury' for the word 'harm' used in section 209, and adds the adjective 'great.' The use of different language in section 461 from that used in section 209 implies, without question, an intent to punish a higher level of bodily injury in section 461 (burglary). The standard dictionary definition of 'great' emphasizes largeness, e.g., of notable size, extreme, marked. Ordinary usage suggests that the Legislature intended to refer to *substantial* injury, not necessarily a concomitant of every forcible rape. Had the Legislature intended *not* to refer to a *substantial* bodily injury, logic impels the conclusion that the Legislature in 1967 would have spelled out the language of the amendments to … sections 461, 213 and 264 in terms of 'bodily harm,' as then used in … section 209, thereby providing for a lesser degree of harm …." (*Caudillo*, *supra*, 21 Cal.3d at p. 578, fn. omitted)

*Caudillo* continued, "[t]he decisional law that has interpreted the term 'great bodily injury' is somewhat in conflict" but the Legislature has defined what constitutes " 'great bodily injury' " in section 12022.7. (*Caudillo*, at pp. 578, 580.) And, "the Legislature, while changing its mind with respect to a detailed definition of 'great bodily injury' before that definition became effective, has now adopted a definition of 'great bodily injury' that requires that the injury constitute a 'significant or substantial *physical* injury.' " (*Id*. at p. 581.) The *Caudillo* court held that neither forcible rape, sodomy, nor

oral copulation, by itself, constitutes a substantial or significant bodily injury to the victim, but only the lesser injury of " 'bodily harm' "; thus, the commission of such offenses, without more, is insufficient to constitute great bodily injury for purposes of the enhancement provision of the burglary statute. (*Id*. at p. 587.) The *Caudillo* court concluded the victim's injuries in that case did not amount to great bodily injury because they were "transitory and short-lived" rather than "severe or protracted in nature." (*Id*. at pp. 588–589.) Notably, the California Supreme Court subsequently disapproved of the test for great bodily injury provided for in *Caudillo*, noting that the Legislature did not include a "specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." (*People v. Escobar* (1992) 3 Cal.4th 740, 750.)

As discussed, article I, section 12 of the California Constitution does not define the phrases "great bodily harm" or felony offenses involving acts of violence nor does petitioner point us to any judicial or statutory authority defining this phrase in the context of the California Constitution. The history of Proposition 4 also does not indicate that the voters considered the precise offenses that would be considered felony offenses involving acts of violence and great bodily harm. And we cannot conclude that the classification of the sex offenses referred to in section 292 as *felony offenses involving acts of violence* and *great bodily harm* is contrary to the text of this constitutional provision. Nor can we conclude *Caudillo*'s discussion of the term " 'great bodily injury,' " in the context of an enhancement provision, which was subsequently held by the California Supreme Court to be erroneous, rendered the use of the phrase "great bodily harm" in article I, section 12 clear. Indeed, the Legislature could have incorporated the term "great bodily injury" rather than "great bodily harm" into the text of article I, section 12 of the California Constitution. It did not. Furthermore, relevant here, we also cannot conclude *Caudillo*'s holding—that forcible rape, sodomy, or oral copulation, by itself, is insufficient to sustain an enhancement finding that, during the course of commission of burglary, the defendant

17.

inflicted great bodily injury on the victim—necessarily precluded the Legislature from classifying certain specified acts of sexual abuse on children as felonies involving acts of violence and involving great bodily harm. (See *People v. Soto* (2011) 51 Cal.4th 229, 243 (*Soto*) ["significant differences between [lewd acts on a child and rape] argue strongly against importing definitions from one context to the other."]; see generally *People v. Martinez* (1995) 11 Cal.4th 434, 444 [Legislature's decision to cast "a prohibited lewd act in … general terms" is consistent with the purpose of section 288 as described by courts, which recognizes the need "to provide children with 'special protection' from sexual exploitation" because they "are 'uniquely susceptible' to such abuse" and "suffer profound harm whenever they are perceived and used as objects of sexual desire."].)

Rather, we conclude the scope of offenses subject to the bail exception provided for pursuant to Proposition 4 is ambiguous. Thus, we may look to the statutes the Legislature has enacted to implement this constitutional provision. (See *Giordano*, *supra*, 42 Cal.4th at p. 655.) And importantly, here, "deference to the legislative interpretation of the term[s]" "felony offense[s] involving acts of violence" and "great bodily harm" in section 292 would serve the broader legislative purpose to deny bail for a wider range of sexual offenses as evidenced by the text and history of Proposition 189. (Cf. *Forster Shipbuilding*, *supra*, 54 Cal.2d at p. 457 ["deference to the legislative interpretation of the term 'personal property,' even if otherwise justifiable, would only defeat the broader legislative purpose to tax leasehold interests in tax-exempt land."].)

Petitioner asserts "the 1993–1994 [L]egislature did not choose, for the most part, to include language effectuating the changes already attempted to be made by … section 292." But, as discussed, the ballot pamphlet for Proposition 189 expressly reflects the Legislature understood that "existing statutory law specifies that certain types of sexual offenses are to be considered felony offenses involving violence and serious bodily harm." (See Proposition 189 Pamphlet, p. 8.) And, it explained, the proposed

18.

"constitutional amendment would permit the courts to deny bail for a wider range of sexual offenses. Specifically, this measure would allow the courts to deny bail if a person is accused of committing any felony 'sexual assault' offense." (See *ibid*.) Thus, the Legislature appears not only to have understood section 292 to be valid, but it also sought to expand the scope of the bail exception in enacting Proposition 189.[3]

Accordingly, we conclude the Legislature has the authority to adopt statutes, including section 292, to implement the bail exceptions provided for in article 1, section 12 of the California Constitution. Thus, section 292 does not constitute an invalid extension by legislative definition of the language in that constitutional provision.

## II.      Substantial Evidence Supports the Superior Court's Denial of Bail*

The superior court found the bail exception provided for in article I, section 12 of the California Constitution applied to petitioner such that bail could be denied. We conclude substantial evidence supports this finding.

### A.      Standard of Review

"[D]efendants charged with noncapital offenses are generally entitled to bail. [Citations.] But article I, section 12 provides for exceptions in particular circumstances when a defendant is charged with at least one felony offense. (Cal. Const., art. I, § 12, subds. (b), (c).)" (*White*, *supra*, 9 Cal.5th at p. 462.) The exception set forth in

---

[3] Such a conclusion also comports with broader legislative initiatives to classify certain sexual offenses against children under the age of 14 as sexually violent offenses and violent felonies known as "super strikes." (See Welf. & Inst. Code, § 6600.1; Pen. Code, § 667, subd. (e)(2)(C)(iv); see generally *In re White*, *supra*, 9 Cal.5th at p. 466 (*White*) ["Whether an arrestee poses a substantial likelihood of great bodily harm to others is a determination similar to what must be found under the[] statutory schemes [in the Sexually Violent Predator Act and to support a factual finding that 'not guilty by reason of insanity' acquittees who have completed their maximum term of commitment continue to represent a substantial danger of physical harm to others]—and each of these schemes involves the decision whether to restrict a person's liberty."].)

* See footnote, *ante*, page 1.

California Constitution, article I, section 12, subdivision (b) applies to: " 'Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others ….' " (*Ibid*.) The California Supreme Court "has interpreted … [the] terminology [when the facts underlying the qualifying charge are 'evident' or the 'presumption great'] to require evidence that would be sufficient to sustain a hypothetical verdict of guilt on appeal. [Citations.] [¶] Whether that evidentiary threshold has been met is a question a reviewing court considers in the same manner the trial court does: by assessing whether the record, viewed in the light most favorable to the prosecution, contains enough evidence of reasonable, credible, and solid value to sustain a guilty verdict on one or more of the qualifying crimes." (*White*, at p. 463, fn. omitted.)

"To deny bail under [California Constitution,] article I, section 12[], [subdivision (b)], a trial court must also find, by clear and convincing evidence, 'a substantial likelihood the person's release would result in great bodily harm to others.' ([Cal. Const.,] [a]rt. I, § 12[, subd.] (b).) This is a fact issue …. On review, we consider whether any reasonable trier of fact could find, by clear and convincing evidence, a substantial likelihood that the person's release would lead to great bodily harm to others." (*White*, *supra*, 9 Cal.5th at p. 465.) That is, the danger posed by an arrestee if released on bail is a question of fact we review for substantial evidence. (See *id*. at p. 466.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

## B.   Analysis

Here, in light of our conclusion that section 292 is valid, we conclude substantial evidence supports the magistrate court's finding that if petitioner were released on bail it is highly probable his release would lead to great bodily harm to others. That is, a reasonable trier of fact could have found clear and convincing evidence that petitioner would cause great bodily harm to others if released, particularly given the language of section 292. (See *White*, *supra*, 9 Cal.5th at p. 467.)

Section 288, subdivision (b)(1) makes it a felony for any person to commit a lewd act upon a child under the age of 14 years "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 288, subd. (b)(1); see *People v. Leal* (2004) 33 Cal.4th 999, 1004.) Duress means " ' "a direct or implied threat of force, violence, danger, *hardship*, or retribution sufficient to coerce *a reasonable person of ordinary susceptibilities* to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' " (*Soto*, *supra*, 51 Cal.4th at p. 246; *Leal*, at p. 1004.) "Because duress is measured by a purely objective standard, a jury could find that the defendant used threats or intimidation to commit a lewd act without resolving how the victim subjectively perceived or responded to this behavior." (*Soto*, at p. 246, fn. omitted.) " ' "The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress." ' " (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.) " ' "Where the defendant is a family member and the victim is young, ... the position of dominance and authority of the defendant and his continuous exploitation of the victim" is relevant to the existence of duress.' " (*People v. Martinez* (2024) 105 Cal.App.5th 178, 189.)

Notably, here, the magistrate court's finding of future danger did not rest " 'merely on the fact of arrest for a particular crime,' but on an 'individualized determination' that [petitioner]'s release threatened others with a substantial likelihood of great bodily harm.

21.

(*White*, *supra*, 9 Cal.5th at p. 469.) Nonetheless, petitioner is charged with a qualifying offense under section 292, namely a violation of section 288, subdivision (b)(1) against confidential victim two, which is deemed a felony offense involving an act of violence and a felony offense involving great bodily harm. There was evidence presented that petitioner repeatedly sexually abused confidential victim two when she was between the ages of four and 10. There was also evidence confidential victim two asked petitioner to stop touching her during one incident but he refused, and he also threatened that she would not get to see her grandmother anymore if she told anyone about the abuse. The evidence presented during the show cause hearing also reflected petitioner apologized when confronted with allegations of sexual abuse of his grandchildren in recorded statements and he hesitated in responding when asked if other children were at risk and if he was continuing to engage in sexual abuse of children. There was also evidence of statements of multiple individuals in petitioner's family alleging that petitioner sexually abused them as children.

Thus, there was substantial evidence petitioner has repeatedly sexually abused multiple children during the course of many years and in doing so, he has taken advantage of a position of trust. A reasonable factfinder could also conclude from the evidence that the abuse was ongoing. There was also substantial evidence petitioner refused to stop the abuse even when met by resistance from a victim; he threatened to disrupt the family relationship if the abuse was reported; and he used his position of trust and authority to manipulate numerous victims. (See *White*, *supra*, 9 Cal.5th at p. 469 [despite defendant's lack of prior criminal record, trial court "could not ignore the most recent evidence of [his] behavior as it bore on his character and his likelihood of reoffending."].) In light of such evidence, the magistrate court was justified in concluding petitioner's behavior was not a one-off or an unusual situation that was unlikely to recur. (See *id.* at p. 468.) Keeping in mind the deferential standard of review, we conclude the court's determination there was clear and convincing evidence that

petitioner's release on bail posed a substantial likelihood of great bodily harm to others finds sufficient support in the record.  (See *id*. at p. 469; see also *Soto*, *supra*, 51 Cal.4th at p. 243 [" '[S]ection 288 was enacted to provide children with "special protection" from sexual exploitation.  [Citation.]  The statute recognized that children are "uniquely susceptible" to such abuse as a result of their dependence upon adults, smaller size, and relative naivete.  [Citation.]  The statute also assumes that young victims suffer *profound harm* whenever they are perceived and used as objects of sexual desire.' " (Italics added)]; *People v. Meeks* (2004) 123 Cal.App.4th 695, 709 ["California has recognized, and reasonably so, that sex offenders present a serious danger to society because of their tendency to repeat their sexual offenses.  Sexual offenses not only invade the deepest privacies of a human being, and thereby may cause permanent emotional scarring, but they frequently result in serious physical harm to, or death of, the victim."].)

Whether substantial evidence supports the trial court's finding that there is a substantial likelihood petitioner's release would result in great bodily harm to others absent consideration of section 292 is a closer question.  We, again, note the deferential standard of review (see *White*, *supra*, 9 Cal.5th at pp. 468, 469), and that the cited evidence could support a conclusion petitioner repeatedly sexually abused multiple children in his family over an extended period of time; he continued to engage in such abuse even when a victim told him to stop; he threatened to harm a familial relationship if the abuse was disclosed; and he did not dispute that the abuse was ongoing.  Nevertheless, because we conclude section 292 is valid, we ultimately decline to opine on this issue as to do so would constitute a purely advisory opinion.  (See generally *People v. Slayton* (2001) 26 Cal.4th 1076, 1084 ["As a general rule, we do not issue advisory opinions indicating ' "what the law would be upon a hypothetical state of facts." ' "]; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 119 [" 'The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court.' "].)  Rather, for the reasons stated, we conclude substantial evidence supports the court's conclusion

that there was a substantial likelihood petitioner's release would result in great bodily harm.

## DISPOSITION

The "Petition for Writ of Habeas Corpus," filed on June 27, 2025, is denied.

PEÑA, J.

WE CONCUR:

LEVY, Acting P. J.

DETJEN, J.

24.